**Opinion issued November 7, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-24-00366-CV**

————————————

**IN THE MATTER OF L.H., a Juvenile**

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-00856J**

## MEMORANDUM OPINION

In this accelerated appeal,[1] appellant, L.H., challenges the juvenile court's

order, entered after a transfer hearing, waiving its exclusive original jurisdiction over

his case and transferring it to a criminal district court for L.H. to be tried as an adult

---

[1]    *See* TEX. FAM. CODE ANN. § 56.01(c)(1)(A), (h) (providing right to immediate
appeal from order "respecting transfer of [a] child for prosecution as an adult" and
instructing that appeal from such order has "precedence over all other cases"); *see
also* TEX. R. APP. P. 28.1.

for the felony offense of murder.[2]  In two issues, L.H. contends that the juvenile court lacked jurisdiction to transfer his case to a criminal district court and the juvenile court, assuming it had jurisdiction, erred in waiving its exclusive original jurisdiction and transferring his case to a criminal district court.

We reverse and remand.

## Background

On May 25, 2021, the State filed its original petition alleging that L.H., at the age of sixteen, had engaged in delinquent conduct by "intentionally and knowingly caus[ing] the death of Matthew Vu, [the complainant], by shooting the complainant with a firearm."  (Emphasis omitted.)  The State further alleged that L.H. had engaged in delinquent conduct by "intend[ing] to cause serious bodily injury to [the complainant]" and "caus[ing] the death of the [c]omplainant by intentionally and knowingly committing an act clearly dangerous to human life, namely shooting the complainant with a firearm."  (Emphasis omitted.)  In its original petition, the State requested that L.H. "be adjudged a child who ha[d] engaged in delinquent conduct and be provided for as the law direct[ed]."

On January 14, 2022, the State filed its first amended petition, alleging the same delinquent conduct and requesting, pursuant to Texas Family Code section 54.02(a), that the juvenile court waive its exclusive original jurisdiction over L.H.'s

---

[2]    *See* TEX. PENAL CODE ANN. § 19.02.

case and transfer it to a criminal district court for L.H. to stand trial as an adult for the felony offense of murder.[3] The State also filed a motion to waive jurisdiction.

On July 25, 2022, the juvenile court held a transfer hearing on the State's request.[4] At the conclusion of the transfer hearing, the juvenile court denied the State's request to waive its jurisdiction and transfer L.H.'s case to criminal district court.

On July 27, 2022, the State filed its second amended petition, again alleging the same delinquent conduct and requesting requested that L.H. "be adjudged a child who ha[d] engaged in delinquent conduct and be provided for as the law direct[ed]." The second amended petition was approved by a Harris County grand jury for determinate sentencing.[5] Also, on July 27, 2022, L.H. turned eighteen years old.

Because L.H. had turned eighteen years old, on July 17, 2023, the juvenile court held a hearing to determine if it could retain jurisdiction over L.H.'s case

---

[3] *See* TEX. FAM. CODE ANN. § 54.02(a) (juvenile court may waive its exclusive original jurisdiction and transfer a child to appropriate district court or criminal district court if certain conditions are met).

[4] *See id.* § 54.02(c) (juvenile court "shall conduct a hearing without a jury to consider transfer of the child for criminal proceedings"); *see also id.* § 54.02(e) (at transfer hearing, juvenile court may consider "written reports from probation officers, professional court employees, guardians ad litem . . . or professional consultants in addition to the testimony of witnesses").

[5] *See generally In re X.A.*, No. 01-19-00227-CV, 2020 WL 237939, at *1 n.2 (Tex. App.—Houston [1st Dist.] Jan. 16, 2020, orig. proceeding) (mem. op.) (explaining "the determinate sentence system").

pursuant to Texas Family Code section 51.0412.[6]  At the conclusion of the hearing, the juvenile court entered a finding that the State had used due diligence in attempting to complete the proceedings before L.H.'s nineteenth birthday and concluded that section 51.0412 authorized it to retain jurisdiction over L.H.'s case. L.H. turned nineteen years old on July 27, 2023.

On January 4, 2024, the State filed its third amended petition, alleging the same delinquent conduct.  In its third amended petition, the State requested, pursuant to Texas Family Code section 54.02(j), that the juvenile court waive its exclusive original jurisdiction over L.H.'s case and transfer it to a criminal district court for L.H. to stand trial as an adult for the felony offense of murder.[7]  The State also filed a motion to waive jurisdiction relying on Texas Family Code section 54.02(j).

---

[6] *See* TEX. FAM. CODE ANN. § 51.0412 ("Jurisdiction Over Incomplete Proceedings"); *see also In re B.R.H.*, 426 S.W.3d 163, 166–67 (Tex. App.— Houston [1st Dist.] 2012, no pet.) ("A juvenile court has exclusive, original jurisdiction over all proceedings involving a person who has engaged in delinquent conduct as a result of acts committed before age seventeen.  A juvenile court does not lose jurisdiction when a juvenile turns eighteen, but its jurisdiction becomes limited. The juvenile court retains limited jurisdiction to either transfer the case to an appropriate court or dismiss the case.  However, . . . Texas Family Code [section 51.0412] provides an exception to this rule, which applies to incomplete proceedings." (internal citations omitted)).

[7] *See* TEX. FAM. CODE ANN. § 54.02(j) (providing juvenile court "may waive its exclusive original jurisdiction and transfer a person to [a] . . . criminal district court for criminal proceedings if: (1) the person is 18 years of age or older; (2) the person was . . . 10 years of age or older and under 17 years of age at the time the person is alleged to have committed . . . an offense under" Texas Penal Code section 19.02; "(3) no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted; (4) the juvenile court finds from a preponderance of the evidence that . . . for a reason beyond the

On April 1, 2024, the juvenile court held a transfer hearing on the State's request. At the transfer hearing, Houston Police Department ("HPD") Detective L. Lange testified that he investigated the shooting of the complainant, which occurred at the Shabu Zone restaurant in Houston, Harris County, Texas. According to Lange, the complainant was L.H.'s stepfather.

Detective Lange explained that after the shooting, he arrived at the restaurant, and other law enforcement officers were already at the scene. Lange was directed to a private dining area in the back of the restaurant where the complainant was lying on the ground. The complainant was face up and had a large pool of blood on the floor around him; he was deceased. The complainant had sustained a gunshot wound to his head, which was caused by a firearm. Law enforcement officers found a cartridge casing in the private dining area.[8]

According to Detective Lange, the complainant's family, including L.H., were eating dinner at the restaurant in the private dining area. At some point, L.H. got out a firearm from his jacket and shot the complainant in the back of the head. L.H. then

---

control of the [S]tate it was not practicable to proceed in juvenile court before the 18th birthday of the person"; and "(5) the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged").

[8] Detective Lange stated that testing confirmed that the cartridge casing was fired from the firearm that was later found in L.H.'s possession.

walked out the front door of the restaurant. L.H. was sixteen years old at the time of the shooting.

After the shooting, two law enforcement officers who were outside in the parking lot of the restaurant were "flagged down" by a security guard who gave them a description of a person who had left the restaurant without paying for his meal. Those officers were able to locate L.H., who matched the description of the person given by the security guard. After L.H. was detained, the law enforcement officers found a "blue handgun" in his waistband.[9] The officers asked if the firearm "was real," and L.H. confirmed that it was. L.H.'s brother then came outside and spoke to the law enforcement officers, telling them that L.H. had shot the complainant inside the restaurant.

Detective Lange further testified that following the shooting, he spoke to several of L.H.'s family members. L.H.'s sister told him that "prior to leaving to go to dinner [that day], she heard a clicking . . . noise coming from [L.H.'s] bedroom." Looking back, L.H.'s sister believed that she had likely heard "the handgun clicking inside [L.H.'s] bedroom." Further, L.H.'s brother told Lange that in the days before

---

[9] According to Detective Lange, DNA testing results showed that it was "approximately 908 quintillion times more likely that [the DNA found on the firearm had] originated from [L.H.] and an unknown, unrelated individual than if [the DNA had] originated from two unknown, unrelated individuals." Thus, there was "very strong support that [L.H. was] a contributor to the DNA" found on the firearm.

the shooting, he had seen L.H. with "a weird green colored handgun." L.H.'s brother also informed Lange that L.H. had mental health issues.

Additionally, at the scene, Detective Lange spoke with other witnesses, including Sabrina Aderibigbe, who stated that she was outside the restaurant on the day of the shooting, and she saw "a male walk out of the front door." The male had a "blueish gray" firearm in his right hand, and he "cocked the weapon," causing a bullet to discharge and land on the ground. Law enforcement officers later found an unfired bullet outside the restaurant.

According to Detective Lange, a surveillance videotaped recording was obtained from the restaurant, and it showed the shooting taking place. On the videotaped recording, L.H. could be seen walking into the private dining area. It also showed the complainant's family, mostly children, then seated at a table. The complainant and L.H.'s mother, the complainant's wife, were seated at another table "kind of facing toward[] the kids." At one point in the videotaped recording, L.H. "pulls the handgun out of . . . his right jacket pocket, puts it up behind [the complainant's] head. And shortly after th[at], he discharges the firearm into [the complainant's] head." Lange testified that the firearm that was seen in the videotaped recording appeared to be the same color as the firearm later found in L.H.'s possession.

7

Michael Abner testified that he worked at the Harris County District Attorney's Office. He was previously involved in L.H.'s case as the assigned prosecutor from April 2022 until October 2023. According to Abner, when he took over the case in April 2022, a hearing was set for May 2022 on the State's first request to transfer L.H.'s case to criminal district court. However, the hearing did not go forward in May because a "certification evaluation" had not been completed. The hearing was then reset for June 2022, but it did not go forward because of "a scheduling matter with the courts." A transfer hearing ultimately took place on July 25, 2022. Abner noted that there was "an instance where [L.H.'s attorney] had a scheduling matter" and Abner was agreeable to changing the date for the hearing, but Abner could not recall when that had occurred.

Abner further testified that the juvenile court, at the transfer hearing, determined that there was probable cause to believe that L.H. had committed the alleged offense. But it declined to transfer L.H.'s case to criminal district court, and the State then "ended up getting a determinate [sentencing] shortly after the [juvenile court] denied" transfer.

According to Abner, L.H.'s case "could have been resolved" in juvenile court "before [L.H.'s] 18th birthday." However, he did not believe that "the State was the holdup." Abner stated that the "holdup" was "the [d]efense . . . waiting for the independent examiner for lack of responsibility." Yet, Abner noted that the State

8

also chose to move forward with requesting a transfer of L.H.'s case to criminal district court.

Abner further testified that when he became involved in L.H.'s case in April 2022, he believed that there was probable cause to believe that L.H. had committed the alleged offense, and the juvenile court had "found probable cause" in the case before L.H. turned eighteen years old. Abner would not have had a hearing about transferring L.H.'s case to criminal district court if he did not believe that there was probable cause to believe that L.H. had committed the alleged offense. Abner further noted that the State had filed L.H.'s case before L.H.'s eighteen birthday, and there was not a time before L.H. turned eighteen years old that the State was unable to locate him. L.H. turned eighteen years old several days after the juvenile court's July 25, 2022 transfer hearing. Abner believed that the State was ready "for a full trial on the merits" before L.H. turned eighteen years old. But the State could not "proceed[] on a trial on the merits" because L.H. was "questioning responsibility."

According to Abner, there were opportunities for L.H.'s case to be resolved in juvenile court before L.H. turned eighteen years old, and the July 25, 2022 transfer hearing was completed before L.H.'s eighteenth birthday. Abner was aware of L.H.'s age throughout the proceedings in juvenile court.

Aimee Robinson, the Harris County Juvenile Probation Chapter 55 liaison, testified that she was involved with juveniles who had been "found not fit to

9

proceed" and went "to the state hospital" until they were "restored." She acted as a "probation officer during the time [the juvenile was] found not fit." Robinson was familiar with L.H.'s case.

According to Robinson, L.H. was "found not fit . . . to proceed with [his] case" on March 9, 2023, after he had turned eighteen years old. As a result, L.H. was sent to a treatment facility—North Texas State Hospital—where he stayed from May 31, 2023 until July 24, 2023. L.H. was diagnosed with schizophrenia and "psychoactive substance dependence uncomplicated." The purpose of L.H. staying at the treatment facility was "[f]or competency[] restoration," meaning that L.H.'s competency could be restored so that he could assist his counsel with his defense, he could understand the nature of the charge against him, he knew the judge and what the judge's role was, and he knew his defense counsel and what defense counsel's role was. Ultimately, L.H.'s competency "was restored," and he was able to move forward with his case.

Following the April 1, 2024, transfer hearing, the juvenile court found that L.H. was older than eighteen years old, he was "accused by petition of engaging in delinquent conduct by committing murder, a first-degree felony offense under Texas Penal Code [s]ection 19.02," and he was older than ten years old and under seventeen years old at the time he allegedly committed the offense. Further, the juvenile court found that there had been "[n]o adjudication concerning the [alleged] offense" and

10

"no adjudication hearing concerning the offense ha[d] been conducted"; L.H. was sixteen years old at the time he committed the alleged offense; and there was probable cause to believe that L.H. had committed the alleged offense. Additionally, the juvenile court found that "from a preponderance of the evidence that for a reason beyond the control of the State it was not practicable to proceed in juvenile court before [L.H.'s] 18th birthday." The juvenile court waived its exclusive original jurisdiction over L.H.'s case and ordered it transferred to a criminal district court for L.H. to stand trial as an adult.

## Juvenile Court Jurisdiction

In his first issue, L.H. argues that the juvenile court lacked jurisdiction to transfer his case to a criminal district court because the State did not file its third amended petition requesting, under Texas Family Code section 54.02(j), that the juvenile court waive its exclusive original jurisdiction over L.H.'s case and transfer it to a criminal district court until after L.H. turned nineteen years old and Texas Family Code section 51.0412 does not allow the juvenile court to retain jurisdiction over the State's third amended petition.

Jurisdiction is a question of law, which we review de novo. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). To issue a valid and binding judgment or order, a court must have both subject matter jurisdiction over a case and personal jurisdiction over the party it purports to bind. *Luciano v.*

11

*SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7–8 (Tex. 2021); *see also In re A.M.*, No. 03-03-00703-CV, 2004 WL 2732142, at *1 (Tex. App.—Austin Dec. 2, 2004, no pet.) (mem. op.) ("A juvenile court must possess both subject matter jurisdiction over a case and personal jurisdiction over a party to issue a binding judgment.").

Subject matter jurisdiction refers to a court's statutory or constitutional power to adjudicate a case. *In re Guardianship of Fairly*, 650 S.W.3d 372, 379 (Tex. 2022). Subject matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Because subject matter jurisdiction cannot be conferred on a court by consent or waiver, a judgment or order is never considered final if the court that issued it lacked subject matter jurisdiction. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000).

In contrast to subject matter jurisdiction, personal jurisdiction concerns the court's power to bind a particular person or party to a judgment or order. *Luciano*, 625 S.W.3d at 8. Personal jurisdiction is composed of two elements: (1) the defendant must be amenable to the jurisdiction of the court and (2) the plaintiff must validly invoke that jurisdiction by valid service of process on the defendant. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 200 (Tex. 1985). Unlike challenges to subject matter jurisdiction, objections to personal jurisdiction generally can be waived, and a party may consent to the personal jurisdiction of a

12

court. *In re Fisher*, 433 S.W.3d 523, 532 (Tex. 2014); *see also In re N.G.W.*, 648 S.W.3d 490, 492 (Tex. App.—San Antonio 2021, no pet.) ("Personal jurisdiction is waived if not raised in the juvenile court.").

A juvenile court's authority to act is conferred by statute. *See In re N.J.A.*, 997 S.W.2d 554, 555 (Tex. 1999); *In re A.S.*, 875 S.W.2d 402, 403 (Tex. App.—Corpus Christi–Edinburg 1994, no pet.). The Juvenile Justice Code governs proceedings in all cases involving the delinquent conduct of an individual who was a child at the time he engaged in the delinquent conduct. TEX. FAM. CODE ANN. § 51.04(a); *see also id.* §§ 51.02(2) (defining child), 51.03(a) (defining delinquent conduct). The juvenile court has exclusive original jurisdiction over allegations by the State that a child has engaged in delinquent conduct. *Id.* § 51.04(a); *see also In re A.M.*, 577 S.W.3d 653, 657 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) ("Murder, when committed by a minor, constitutes delinquent conduct."). The authority of the juvenile court to hear and decide a case depends on whether the case involves "delinquent conduct" engaged in by an individual who was a child at the time the conduct occurred. TEX. FAM. CODE ANN. § 51.04(a); *see also id.* §§ 51.02(2) (defining child), 51.03(a) (defining delinquent conduct). A juvenile court's subject matter jurisdiction is invoked by the State filing a petition containing the requisite jurisdictional facts. *See id.* § 53.04 (listing required jurisdictional facts); *In re A.M.*, 2004 WL 2732142, at *1.

Unlike the juvenile court's subject matter jurisdiction, which depends on the individual's age at the time he engaged in delinquent conduct, whether the juvenile court has personal jurisdiction over an individual depends on his age at the time a proceeding occurs. *See In re N.J.A.*, 997 S.W.2d at 555–57; *see also In re A.D.D.*, 974 S.W.2d 299, 304 (Tex. App.—San Antonio 1998, no pet.). Although a juvenile court does not lose jurisdiction when an individual turns eighteen years old, the juvenile court's jurisdiction over the individual becomes limited. *In re A.M.*, 577 S.W.3d at 658; *In re B.R.H.*, 426 S.W.3d 163, 166 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding). However, under Texas Family Code section 51.0412, if proceedings cannot be completed in the juvenile court by the time the individual turns eighteen or nineteen years old, the juvenile court retains "jurisdiction over [the] person, without regard to the age of the person" if certain conditions are met. TEX. FAM. CODE ANN. § 51.0412; *see also In re N.G.W.*, 648 S.W.3d at 492 ("Under Texas Family Code section 51.0412, the juvenile court may bind the juvenile defendant if his case began in the court prior to the juvenile turning eighteen or nineteen years old, if it [was] pending when he turn[ed] eighteen or nineteen, and if the State exercised due diligence in attempting to complete the proceeding before the juvenile's eighteenth or nineteenth birthday."). Specifically, section 51.0412 provides:

> The court retains jurisdiction over a person, without regard to the age of the person, who is a respondent in an adjudication proceeding, a

disposition proceeding, a proceeding to modify disposition, a proceeding for waiver of jurisdiction and transfer to criminal court under [Texas Family Code] [s]ection 54.02(a), or a motion for transfer of determinate sentence probation to an appropriate district court if:

> (1)    the petition or motion was filed while the respondent was younger than 18 or 19 years of age, as applicable;
>
> (2)    the proceeding is not complete before the respondent becomes 18 or 19 years of age, as applicable; and
>
> (3)    the court enters a finding in the proceeding that the prosecuting attorney exercised due diligence in an attempt to complete the proceeding before the respondent became 18 or 19 years of age, as applicable.

TEX. FAM. CODE ANN. § 51.0412.

On May 25, 2021, when L.H. was sixteen years old, the State filed its original petition alleging that L.H., at the age of sixteen, had engaged in delinquent conduct by "intentionally and knowingly caus[ing] the death of" the complainant, "by shooting the complainant with a firearm" and by "intend[ing] to cause serious bodily injury to [the complainant]" and "caus[ing] the death of the [c]omplainant by intentionally and knowingly committing an act clearly dangerous to human life, namely shooting the complainant with a firearm." (Emphasis omitted.) Appellant, in his briefing, does not assert that he was not a "child" when he engaged in the alleged delinquent conduct or that his alleged conduct did not constitute "delinquent conduct." *See id.* § 51.04(a); *see also id.* §§ 51.02(2) (defining child), 51.03(a) (defining delinquent conduct). Appellant also does not assert that the State failed to

15

file a petition containing the requisite jurisdictional facts, thereby failing to invoke the juvenile court's subject matter jurisdiction. *See id.* § 53.04 (listing required jurisdictional facts); *In re A.M.*, 2004 WL 2732142, at *1 (juvenile court's subject matter jurisdiction is invoked by State filing petition containing requisite jurisdictional facts). Thus, we conclude that L.H. has not challenged the subject matter jurisdiction of the juvenile court.

Instead, L.H. asserts that once he turned nineteen years old, the juvenile court no longer retained jurisdiction over him, and the juvenile court could not utilize Texas Family Code section 51.0412 to "retain[] jurisdiction" or extend its jurisdiction to order L.H.'s case transferred to a criminal district court. L.H.'s complaint concerns personal jurisdiction rather than subject matter jurisdiction. *See In re N.G.W.*, 648 S.W.3d at 492 (because Texas Family Code section 51.0412 "deals with the juvenile court's authority to bind the juvenile defendant when his case is pending in the court on his eighteenth or nineteenth birthday," "it pertains to personal jurisdiction rather than subject matter jurisdiction").

Personal jurisdiction challenges can be waived. *See In re N.G.W.*, 648 S.W.3d at 492; *In re E.D.C.*, 88 S.W.3d 789, 792 (Tex. App.—El Paso 2002, no pet.); *see also In re Fisher*, 433 S.W.3d at 532; *Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A party must raise his objection to personal jurisdiction before the juvenile court to preserve his complaint

for appeal. *See State v. C.J.F.*, 183 S.W.3d 841, 852–53 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding personal jurisdiction challenge not raised in trial court could not be raised for first time on appeal); *see also* TEX. R. APP. P. 33.1(a). Because L.H. did not raise his complaint that the juvenile court lacked personal jurisdiction over him in the underlying proceeding, we hold that he has waived his personal jurisdiction complaint for purposes of appellate review.[10] *See, e.g.*, *In re N.G.W.*, 648 S.W.3d at 492; *see also In re J.M.*, No. 03-14-00027-CV, 2015 WL 3393819, at *3 (Tex. App.—Austin May 21, 2015, no pet.) (mem. op.).

## Transfer to Criminal District Court

In his second issue, appellant argues that the juvenile court erred in transferring his case to criminal district court because "the evidence was legally and factually insufficient to support the juvenile court's finding that 'from a preponderance of the evidence that for a reason beyond the control of the State it was not practicable to proceed in juvenile court before [L.H.'s] 18th birthday.'"

As previously noted, juvenile courts have exclusive original jurisdiction over cases involving delinquent conduct engaged in by a child. *See* TEX. FAM. CODE ANN. §§ 51.02(2) (defining child), 51.03(a) (defining delinquent conduct), 51.04(a);

---

[10] In its appellee's brief, the State argued that this Court could not address L.H.'s first issue because L.H. had waived his personal jurisdiction complaint by failing to raise it in the juvenile court. Although L.H. filed a reply brief, he did not respond to the State's waiver argument.

17

*see also Bell v. State*, 649 S.W.3d 867, 885 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd). But the right of a juvenile offender to remain outside the jurisdiction of the criminal district court is not absolute. *Ex parte Arango*, 518 S.W.3d 916, 920 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). A juvenile court may, after an evidentiary hearing, waive its exclusive original jurisdiction and transfer a child to an appropriate criminal district court for criminal proceedings if certain conditions are met. *See* TEX. FAM. CODE ANN. § 54.02; *Bell*, 649 S.W.3d at 885–86.

We review a juvenile court decision to waive its exclusive original jurisdiction and transfer a case to criminal district court using two steps. *Bell*, 649 S.W.3d at 887. First, we review the juvenile court's findings using the traditional evidentiary sufficiency review. *In re C.C.C.*, No. 13-21-00371-CV, 2022 WL 710143, at *8 (Tex. App.—Corpus Christi–Edinburg Mar. 10, 2022, no pet.) (mem. op.); *In re Z.M.*, No. 02-21-00213-CV, 2021 WL 4898851, at *2 (Tex. App.—Fort Worth Oct. 21, 2021, no pet.) (mem. op.); *see also In re A.M.*, 577 S.W.3d at 658–59. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the juvenile court's findings and disregard contrary evidence unless a reasonable fact finder could not reject it. *In re B.M.*, No. 01-18-00898-CV, 2019 WL 1388561, at *7 (Tex. App.—Houston [1st Dist.] Mar. 28, 2019, no pet.) (mem. op.); *see also Faisst v. State*, 105 S.W.3d 8, 12 (Tex. App.—Tyler 2003, no pet.). If there is more than a scintilla of evidence to support the findings, then the

evidence is legally sufficient. *In re B.M.*, 2019 WL 1388561, at \*7; *see also Faisst*, 105 S.W.3d at 12. Under a factual-sufficiency review, we consider all the evidence presented to determine if the juvenile court's findings conflict with the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *In re C.C.C.*, 2022 WL 710143, at \*8; *In re B.M.*, 2019 WL 1388561, at \*7; *see also Faisst*, 105 S.W.3d at 12.

If the juvenile court's findings are supported by legally and factually sufficient evidence, we review the juvenile court's ultimate waiver decision for an abuse of discretion. *In re C.C.C.*, 2022 WL 710143, at \*8; *In re Z.M.*, 2021 WL 4898851, at \*2; *In re A.M.*, 577 S.W.3d at 659. A juvenile court abuses its discretion if it acts without reference to any guiding rules and principles. *In re Nat'l Lloyds Ins., Co.*, 507 S.W.3d 219, 226 (Tex. 2016); *In re C.C.C.*, 2022 WL 710143, at \*8. A juvenile court abuses its discretion when its transfer decision is essentially arbitrary, given the evidence upon which it was based. *In re Z.M.*, 2021 WL 4898851, at \*2. By contrast, a waiver decision representing "a reasonably principled application of the legislative criteria" generally will pass muster under the abuse-of-discretion standard of review. *Id.* (internal quotations omitted). An abuse of discretion does not occur when the juvenile court bases its decision on conflicting evidence. *In re B.N.F.*, 120 S.W.3d 873, 877 (Tex. App.—Fort Worth 2003, no pet.).

19

Once an individual turns eighteen years old, Texas Family Code section 54.02(j) allows the juvenile court to waive its exclusive original jurisdiction and transfer the individual to the appropriate criminal district court for criminal proceedings if:

> (1)    the person is 18 years of age or older;
>
> (2)    the person was . . . 10 years of age or older and under 17 years of age at the time the person is alleged to have committed . . . an offense under [Texas Penal Code] [s]ection 19.02 . . . ;
>
> (3)    no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted;
>
> (4)    the juvenile court finds from a preponderance of the evidence that . . . for a reason beyond the control of the [S]tate it was not practicable to proceed in juvenile court before the 18th birthday of the person; [and]
>
> (5)    the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged.

TEX. FAM. CODE ANN. § 54.02(j).

Here, the juvenile court found, among other things, that: (1) L.H. was born on July 27, 2004 and was "older than 18 years of age"; (2) L.H. was "accused by petition of engaging in delinquent conduct by committing murder, a first-degree felony offense under Texas Penal Code [s]ection 19.02, on or about April 28, 2021"; (3) L.H. was "older than 10 years of age and under 17 years of age at the time he [was] alleged to have committed the offense"; (4) "[n]o adjudication concerning the

20

offense alleged ha[d] been made and no adjudication hearing concerning the offense ha[d] been conducted"; (5) L.H. was sixteen years old when he allegedly "committed the offense"; (6) "[t]here [was] probable cause to believe that [L.H. had] committed the offense alleged"; and (7) "from a preponderance of the evidence that for a reason beyond the control of the State it was not practicable to proceed in juvenile court before [L.H.'s] 18th birthday." *See id.*

We note that "[c]hildren ordinarily are not subject to criminal proceedings like adults." *In re S.G.R.*, 496 S.W.3d 235, 238 (Tex. App.—Houston [1st Dist.] 2016, no pet.). And "[g]enerally, the transfer of a juvenile offender from a juvenile court to a criminal district court for prosecution as an adult should be regarded as the exception, not the rule." *In re J.W.W.*, 507 S.W.3d 408, 414 (Tex. App.—Houston [1st Dist.] 2016, no pet.). In a transfer proceeding under Texas Family Code section 54.02(j), the State has the burden of producing evidence that persuades the juvenile court, by a preponderance of the evidence, that waiver of its exclusive original jurisdiction is appropriate. *In re A.M.*, 577 S.W.3d at 658. If the State does not meet its burden of establishing the requirements of Texas Family Code section 54.02(j) by a preponderance of the evidence, then the juvenile court may not transfer a case to criminal district court. *See id.*

L.H. challenges the juvenile court's finding that transfer of his case was appropriate because "from a preponderance of the evidence that for a reason beyond

21

the control of the State it was not practicable to proceed in juvenile court before [L.H.'s] 18th birthday." Stated differently, L.H. argues that the juvenile court erred in transferring his case to a criminal district court because the State did not meet its burden under Texas Family Code section 54.02(j)(4)(A) to establish by a preponderance of the evidence that "for a reason beyond [its] control . . . it was not practicable to proceed in juvenile court before" L.H.'s eighteenth birthday. *See* TEX. FAM. CODE ANN. § 54.02(j)(4)(A). On appeal, the State and L.H. disagree as to the meaning of "it was not practicable to proceed in juvenile court" before L.H.'s eighteenth birthday, as the phrase is used in section 54.02(j)(4)(A). *See id.*

The Texas Court of Criminal Appeals has explained that in general Texas Family Code section 54.02(j)(4) "is meant to limit the prosecution of an adult for an act he committed as a juvenile if his case could reasonably have been dealt with when he was still a juvenile." *Moore v. State*, 532 S.W.3d 400, 405 (Tex. Crim. App. 2017). The goal of statutory construction is to ascertain and give effect to the Legislature's intended meaning. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). In doing so, we start with the plain and ordinary meaning of the statute's words. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003); *see also Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless . . . the plain meaning [would] lead[] to absurd or nonsensical results.").

22

Texas Family Code section 54.02(j)(4)(A) does not define "practicable" or "proceed." *See* TEX. FAM. CODE ANN. § 54.02(j)(4)(A); *see also In re E.B.*, No. 12-22-00162-CV, 2022 WL 17074849, at *4 (Tex. App.—Tyler Nov. 17, 2022, no pet.) (mem. op.) (explaining Texas Family Code section 54.02(j) does not define "practicable" (internal quotations omitted)). Thus, we must give those terms their plain meaning. *See Thompson v. Tex. Dep't of Licensing & Regul.*, 455 S.W.3d 569, 570 (Tex. 2014); *State v. Holcombe*, 187 S.W.3d 496, 500 (Tex. Crim. App. 2006). "In determining the plain meaning of a word, we initially look to dictionary definitions." *Holcombe*, 187 S.W.3d at 500; *see also In re E.B.*, 2022 WL 17074849, at *4.

Other Texas appellate courts have examined the meaning of "practicable" as it is used in Texas Family Code section 54.02(j)(4)(A), explaining that "Black's Law Dictionary defines 'practicable' as 'reasonably capable of being accomplished; feasible.'" *In re E.B.*, 2022 WL 17074849, at *4 (quoting *Practicable*, BLACK'S LAW DICTIONARY 1210 (8th ed. 2004)); *see also In re M.A.C.S.-C.*, No. 04-23-00139-CV, 2024 WL 697095, at *3 (Tex. App.—San Antonio Feb 21, 2024, pet. denied) (mem. op.). And "Merriam-Webster's Collegiate Dictionary defines 'practicable' as 'capable of . . . being done or accomplished: Feasible.'" *In re E.B.*, 2022 WL 17074849, at *4 (alteration in original) (quoting *Practicable*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 974 (11th ed. 2011)).

23

However, it does not appear that any Texas appellate court has directly considered the meaning of "proceed" as it is used in Texas Family Code section 54.02(j)(4)(A). Nevertheless, Merriam-Webster's Dictionary defines "proceed" to mean "to begin and carry on an action, process, or movement." *Proceed*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/proceed (last visited Nov. 1, 2024). Similarly other dictionaries have defined "proceed" to mean "to go on and do something." *See Jones v. State*, 175 S.W.3d 927, 932 (Tex. App.—Dallas 2005, no pet.) (quoting *Proceed*, XII OXFORD ENGLISH DICTIONARY 544 (2d. 1989)). Thus, based on these definitions, we conclude that in order for the transfer of L.H.'s case to criminal district court to have been appropriate under Texas Family Code section 54.02(j), the State was required to prove, by a preponderance of the evidence, that for a reason beyond its control, it was not reasonably feasible "to begin and carry on an action" or "go on and do something" in juvenile court before L.H.'s eighteenth birthday.

We note that the State, in its briefing, asserts that Texas Family Code section 54.02(j)(4)(A) "permits [the] discretionary transfer" of a case to criminal district court so long as the State proves by a preponderance of the evidence that the case could not "be resolved in juvenile court [before the child's eighteenth birthday] for reasons beyond the State's control." But section 54.02(j)(4)(A) does not contain the word "resolve" or the word "complete." And section 54.02(j)(4)(A) does not state

24

that the juvenile court may waive its exclusive original jurisdiction and transfer a case to criminal district court if it finds "from a preponderance of the evidence that . . . for a reason beyond the control of the [S]tate it was not practicable [for the case to be resolved or completed] in juvenile court before the [person's] 18th birthday." *Cf.* TEX. FAM. CODE ANN. § 54.02(j)(4)(A). Courts may not insert words into a statute except to give effect to legislative intent. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995). And we must presume that every word excluded from a statute was excluded for a purpose. *Id.*; *AMX Enters., Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 208 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Thus, we conclude that Texas Family Code section 54.02(j)(4)(A) does not allow the State to merely prove that it could not "resolve" or "complete" a case in juvenile court before a person's eighteenth birthday. Being unable to "proceed" with a case in juvenile court is not the same as being unable to "resolve" a case in juvenile court before a person's eighteenth birthday. Instead, for the juvenile court to waive its exclusive original jurisdiction under Texas Family Code section 54.02(j)(4)(A), the State must have established, by a preponderance of the evidence, that, for a reason beyond its control, it was not practicable, i.e., reasonably feasible, to proceed, i.e., "begin and carry on an action" or "go on and do something," in juvenile court before L.H.'s eighteenth birthday. *See* TEX. FAM. CODE ANN. § 54.02(j)(4)(A).

25

The parties do not dispute that L.H. was born on July 27, 2004. On May 25, 2021, when L.H. was sixteen years old, the State filed its original petition in juvenile court alleging that L.H., at the age of sixteen, had engaged in delinquent conduct.[11] In its original petition, the State requested that L.H. "be adjudged a child who ha[d] engaged in delinquent conduct and be provided for as the law direct[ed]." On January 14, 2022, when L.H. was seventeen years old, the State chose to amend its original petition. In its first amended petition, the State alleged the same delinquent conduct, but rather than requesting that L.H. "be adjudged a child who ha[d] engaged in delinquent conduct," the State requested, pursuant to Texas Family Code section 54.02(a), that the juvenile court waive its exclusive original jurisdiction over L.H.'s case and transfer it to a criminal district court for L.H. to stand trial as an adult for the felony offense of murder. The State also filed a motion to waive jurisdiction. L.H. was served with the first amended petition on January 19, 2022, and his mother was served with it on April 4, 2022. At the time, L.H. was still seventeen years old. *Cf. In re A.M.*, 577 S.W.3d at 672 (asking whether State proved that it was impracticable for State for reasons beyond its control, "to file a petition and obtain a transfer ruling from juvenile court before the child's eighteenth birthday").

---

[11] At the April 1, 2024 transfer hearing, which took place after L.H.'s eighteenth birthday, the juvenile court took judicial notice of its file. *See, e.g.*, *In re M.A.C.S.-C.*, No. 04-23-00139-CV, 2024 WL 697095, at *4 n.4 (Tex. App.—San Antonio Feb. 21, 2024, pet. denied) (mem. op.); *In re B.C.*, No. 02-21-00444-CV, 2022 WL 1420533, at *3 (Tex. App.—Fort Worth May 5, 2022, no pet.) (mem. op.).

On June 6, 2022, a "Certification Evaluation" was completed, which was required before the juvenile court could hold a hearing on the State's request that it waive its exclusive original jurisdiction over L.H.'s case and transfer it to a criminal district court. *See* TEX. FAM. CODE ANN. § 54.02(d) ("Prior to the [transfer] hearing, the juvenile court shall order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense."). And on July 25, 2022, the juvenile court held a transfer hearing before L.H.'s eighteenth birthday to consider the State's request that it waive its exclusive original jurisdiction pursuant to Texas Family Code section 54.02(a). At the hearing, the State tendered exhibits,[12] which the juvenile court admitted into evidence, and called an HPD Sergeant to testify about the shooting of the complainant. The State also cross-examined L.H.'s mother who testified at the hearing, and it presented argument as to why the juvenile court should waive its exclusive original jurisdiction pursuant to Texas Family Code section 54.02(a). At the conclusion of the July 25, 2022 transfer hearing, the juvenile court denied the State's request to waive its jurisdiction and transfer L.H.'s case to criminal district court. *Cf. In re A.M.*, 577 S.W.3d at 672. (asking whether State proved that it was impracticable for State for reasons beyond its control, "to file a

---

[12] One of the exhibits admitted into evidence was a surveillance videotaped recording from the restaurant where the complainant was shot. The videotaped recording showed L.H. shooting the complainant.

petition and obtain a transfer ruling from juvenile court before the child's eighteenth birthday").

Subsequently, on July 27, 2022—L.H.'s eighteenth birthday—the State filed its second amended petition, alleging the same delinquent conduct and requesting that L.H. "be adjudged a child who ha[d] engaged in delinquent conduct and be provided for as the law direct[ed]." The second amended petition was signed by the State on July 25, 2022 and approved by a Harris County grand jury for determinate sentencing on July 26, 2022—the day before L.H. turned eighteen years old.

At the April 1, 2024 transfer hearing, which took place when L.H. was nineteen years old, Abner testified that he had previously served as the prosecutor assigned to L.H.'s case from April 2022 until October 2023. Abner explained that the State had filed its petition alleging delinquent conduct in L.H.'s case before L.H.'s eighteenth birthday, and there was not a time before L.H. turned eighteen years old that the State was not able to locate him. When Abner became involved in L.H.'s case in April 2022, L.H. was seventeen years old, and Abner believed that there was probable cause to believe that L.H. had committed the alleged offense. Abner was always aware of L.H.'s age throughout the underlying proceedings in juvenile court.

Abner further explained that prior to L.H.'s eighteenth birthday, the juvenile court held a hearing to address the State's request that the juvenile court waive its

28

exclusive original jurisdiction and transfer L.H.'s case to criminal district court pursuant to Texas Family Code section 54.02(a). At that transfer hearing, the juvenile court determined that there was probable cause to believe that L.H. had committed the alleged offense. Abner explained that it was the State's choice to move forward with requesting a transfer of L.H.'s case to criminal district court pursuant to Texas Family Code section 54.02(a) before L.H.'s eighteenth birthday, and Abner believed that L.H.'s case "could have been resolved" in juvenile court "before [L.H.'s] eighteenth birthday."

Based on the foregoing, we cannot say that there is more than a scintilla of evidence to support a finding that the State proved, by a preponderance of the evidence, that for a reason beyond its control, it was not reasonably feasible "to begin and carry on" L.H.'s case or "to go on and do something" in juvenile court before L.H.'s eighteenth birthday.[13] In fact, the record indicates that the State was able to proceed in juvenile court before L.H.'s eighteenth birthday. *See* TEX. FAM. CODE ANN. § 54.02(j)(4)(A). Thus, we hold that the evidence is legally insufficient to

---

[13] To the extent that the State suggests that we rely on events that occurred after L.H.'s eighteenth birthday to determine whether the evidence was sufficient to support the juvenile court's finding "that for a reason beyond the control of the State it was not practicable to proceed in juvenile court before [L.H.'s] 18th birthday," we decline to do so. *See In re A.M.H.*, No. 12-19-00284-CV, 2020 WL 2078412, at *7 (Tex. App.—Tyler Apr. 30, 2020, no pet.) (mem. op.) (concluding "facts explaining delays occurring after the defendant turned eighteen [were] not relevant in th[e] analysis"); *Collins v. State*, 516 S.W.3d 504, 520–21 (Tex. App.—Beaumont 2017, pet. ref'd).

29

support the trial court's finding that "from a preponderance of the evidence that for a reason beyond the control of the State it was not practicable to proceed in juvenile court before [L.H.'s] 18th birthday."[14]  *See id.*  Because we have held that the juvenile court's finding, under Texas Family Code section 54.02(j)(4)(A), is not supported by legally sufficient evidence, we further hold that the juvenile court abused its discretion in waiving its exclusive original jurisdiction and transferring L.H.'s case to criminal district court for L.H. to stand trial as an adult.  *See, e.g.*, *In re A.M.H.*, No. 12-19-00284-CV, 2020 WL 2078412, at *7 (Tex. App.—Tyler Apr. 30, 2020, no pet.) (mem. op.).

We sustain L.H.'s second issue.

## Conclusion

We reverse the order of the juvenile court waiving its exclusive original jurisdiction and transferring the case to criminal district court.  We note that generally, once a child turns eighteen years old the juvenile court's jurisdiction is limited to either dismissing a case or transferring the case to a criminal district court.  However, under Texas Family Code section 51.0412, if proceedings cannot be completed in the juvenile court by the time a person turns eighteen or nineteen years old, the juvenile court may retain "jurisdiction over [the] person, without regard to

---

[14]  Because of our holding, we need not address L.H.'s assertion that the evidence was also factually insufficient to support the trial court's finding.  *See* TEX. R. APP. P. 47.1.

30

the age of the person" if his case began in the court prior to the person turning eighteen or nineteen years old, if it was pending when he turned eighteen or nineteen, and if the State exercised due diligence in attempting to complete the proceeding before the person's eighteenth or nineteenth birthday. *See* TEX. FAM. CODE ANN. § 51.0412; *see also In re N.G.W.*, 648 S.W.3d at 492. In this case, the juvenile court, on July 17, 2023, held a hearing to determine if it could retain jurisdiction over L.H.'s case pursuant to Texas Family Code 51.0412. At the conclusion of the hearing, the juvenile court entered a finding that the State had used due diligence in attempting to complete the proceedings before L.H.'s nineteenth birthday and concluded that section 51.0412 authorized it to retain jurisdiction over L.H.'s case. *See In re C.C.C.*, 2022 WL 710143, at *12 n.12 (if section 51.0412 "is not satisfied, then the [juvenile] court must dismiss the case, but if it is satisfied, then the court retains jurisdiction"). We have held that L.H. waived his complaint about the juvenile court's jurisdiction under Texas Family Code section 51.0412. Accordingly, because we have found that the juvenile court erred in transferring L.H.'s case to criminal district court, but the juvenile court has held that it has continuing jurisdiction over L.H.'s case, irrespective of his age, under Texas Family Code section 51.0412, we remand the case to the juvenile court for further proceedings rather than dismiss it. *See, e.g.*, *Powell v. State*, No. 05-07-01078-CR, 05-07-01079-CR 2009 WL 866194, at *3 (Tex. App.—Dallas Apr. 1, 2009, pet.

31

ref'd) (mem. op., not designated for publication) (finding juvenile court erred by transferring to criminal district court under Texas Family Code section 54.02, but remanding case to juvenile court for further proceedings); *In re M.A.V.*, 954 S.W.2d 117, 119 (Tex. App.—San Antonio 1997, pet. denied) (reversing juvenile court's transfer order and remanding case to juvenile court for proceedings consistent with appellate court's opinion); *see also In re C.C.C.*, 2022 WL 710143, at \*12 n.12; *In re T.A.W.*, 234 S.W.3d 704, 705 n.3 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (noting nothing demonstrated that juvenile court did not retain jurisdiction over juvenile under Texas Family Code section 51.0412).


Julie Countiss
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss